IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FREDRIC PENA,                          :
                    Petitioner,        :
            v.                         :   Civil Action No. 04-51J
TRACY JOHNS, WARDEN, F.C.I.            :
LORETTO, BUREAU OF PRISONS, and        :
UNITED STATES MARSHALS SERVICE,        :
                    Respondents        :

Report and Recommendation

Recommendation

        Pending is petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C.§ 2241.  I recommend that the petition be denied.

Report

        Petitioner Frederic Pena entered a negotiated plea of guilty, see docket no. 5, Response, Exhibit H, Plea Agreement, on January 30, 2002, in the United States District Court for the Western District of New York, to conspiracy to defraud the United States.  Judge William Skretny sentenced petitioner on June 26, 2002, to 4 months imprisonment to be followed by a 3 year term of supervised release.  docket no. 1, Petition, Exhibits; docket no. 5, Exhibit A, Judgment and Commitment.  Judge Skretny recommended that petitioner "be placed in the Oklahoma Halfway House" to serve his term of imprisonment.  Judge Skretny amended the sentence on July 18, 2002, to recommend that petitioner serve his period of incarceration "in the halfway house which is closest to his residence in the Western District of Pennsylvania."  docket no. 5, Exhibit B, Amended Judgment.  Judge Skretny later stayed the

designation of petitioner to a Bureau of Prisons facility because
he was completing a training program.   docket no. 5, Exhibit F,
United States v. Pena, 2003 WL 21197024 at *1 (W.D.N.Y.May 16,
2003).

On December 13, 2002, the Department of Justice issued
a letter opinion advising that the BOP's practice of designating
less serious offenders (Zone C or Zone D in the United States
Sentencing Guidelines Sentencing Table) initially to community
corrections centers and halfway houses rather having them serve
their period of imprisonment in a federal correctional institution
was an incorrect application of existing law.   docket no. 5,
Exhibit C.   The Department of Justice distinguished between the
sentencing statutes and the Guidelines' use of the terms
"imprisonment" and "community confinement," and noted that the
Bureau of Prisons could not disregard that distinction by using
community corrections centers and similar facilities as places of
imprisonment.   The Bureau of Prisons gave notice that it would
begin following the Department of Justice's interpretation for
persons designated after December 20, 2002, see docket no. 5,
Exhibit F, United States v. Pena, supra at *1 n.3, and when it
designated petitioner's place of imprisonment on January 9, 2003,
it designated the Satellite Prison Camp at F.C.I. Loretto.   docket
no. 5, Exhibit E.

Petitioner sought re-sentencing on January 22, 2003, arguing that the plea agreement was breached because the Bureau of Prisons was not able to honor the sentencing recommendation. Petitioner sought in the alternative a writ of mandamus or habeas corpus compelling the Bureau of Prisons to adhere to its previous practice, arguing that application of the new interpretation of existing law would result in an ex post facto increase in his punishment.  Judge Skretny denied both motions. docket no. 5, Exhibit F, United States v. Pena, supra.  Judge Skretny first noted that the recommendation for halfway house placement was understood by all parties to be not binding on the Bureau of Prisons and that no false or misleading information was presented during the plea or at sentencing regarding the court's power in this respect. Second, Judge Skretny held that the Ex Post Facto Clause does not confer immunity from the consequences of having an erroneous legal position corrected.  Finally, Judge Skretny held that the revised designation did not violate the Clause, assuming it applied, because the designation did not increase the length of his sentence, it only altered the conditions of his confinement.

Petitioner appealed to the United States Court of Appeals for the Second Circuit, which vacated the district court's order and remanded with directions that the matter be dismissed for lack of subject matter jurisdiction.  United States v. Pena, 84 Fed.Appx. 118 (2d Cir.2003).  The appellate panel held that

petitioner's request for re-sentencing had been untimely under
Fed.R.Crim.P. 35, and that the petition for mandamus or for a writ
of habeas corpus under 28 U.S.C.§ 2241 had to be brought in the
district of the proposed confinement.  The appellate panel further
noted that petitioner abandoned his re-sentencing request at oral
argument.

Petitioner asserts two claims, docket no. 4, Brief in
Support of Petitioner's Petition: 1) the guilty plea provided that
petitioner would serve his sentence at a community corrections
center and, therefore, petitioner's settled plea expectation has
been frustrated by BOP's action; and 2) the BOP's change in policy,
which occurred after his plea and sentence but before his
designation to a federal facility, is an improper ex post facto
increase in his punishment.

Petitioner's argument that the terms of the plea
agreement were breached by the Bureau of Prisons' change in policy
was addressed by Judge Skretny, and even if he did not have
jurisdiction because the request for resentencing was untimely,
that does not change the fact that he was in the best position to
analyze the conduct of the parties, the expectation of the
petitioner, and the terms of the agreement.  There is no evidence
in this record beyond that presented to Judge Skretny, and no basis
for substituting this court's reading of a cold record for Judge
Skretny's finding that all the parties understood that the

4

recommended designation was not binding on the Bureau of Prisons.
As Judge Skretny observed, the impact on petitioner of the change
from former practice was unfortunate, given what Judge Skretny
thought a just sentence ought to be, but there was no violation of
any legal right.   Petitioner has never been legally entitled to
serve his sentence in conformity with the recommendation, because
directing placement in a particular facility is beyond the court's
power.   United States v. Serafini, 233 F.3d 758, 778 n.23 (3d
Cir.2000).

Petitioner cites opinions accepting his ex post facto
argument, see Monohan v. Winn, 276 F.Supp.2d 196 (D.Mass.2003);
Iacobini v. United States, 251 F.Supp.2d 1015 (D.Mass.2003); Byrd
v. Moore, 252 F.Supp.2d 293 (W.D.N.C.2003), while respondent cites
the rejection of petitioner's arguments by other courts, see United
States v. Gilbride, 2003 WL 297563 (M.D.Pa.2003); United States v.
Kramer, 2003 WL 1964489 (N.D.Ill.2003); Borgetti v. Bureau of
Prisons, 2003 WL 743936 (N.D.Ill.2003); United States v. Schild,
2003 WL 260672 (D. Kan.2003).

My analysis begins with the Supreme Court's statement of
the two elements of an Ex Post Facto Clause claim: 1) retrospective
application and 2) disadvantage to the offender.   Lynce v. Mathis,
519 U.S. 433, 441 (1997).   See also California Dep't of Corrections
v. Morales, 514 U.S. 499, 504 (1995); Collins v. Youngblood, 497
U.S. 37, 43 (1990); Coady v. Vaughn, 251 F.3d 480, 487-88(3d

Cir.2001).   There is no question here that the Bureau of Prisons change of policy is retrospective, since petitioner committed his offense conduct, entered his change of plea, and was sentenced before the change was effective.   The element of disadvantage includes alteration of the elements of the offense (not relevant here) or "increasing the punishment for the crime."   Lynce v. Mathis, 519 U.S. at 441.   The Supreme Court has held that qualitative changes in the conditions of a sentence as well as quantitative changes in the length of a sentence can violate the Ex Post Facto Clause.   See Weaver v. Graham, 450 U.S. 24, 32 (1981)("[W]e have held that a statute may be retrospective even if it alters punitive conditions outside the sentence.   Thus, we have concluded that a statute requiring solitary confinement prior to execution is ex post facto when applied to someone who committed a capital offense prior to its enactment[.]") However, almost all of the Supreme Court's "increase in punishment" decisions have analyzed statutory or executive agency policy changes which affect the length or potential length of a sentence; the Court has not often analyzed how severe an alteration in the conditions of confinement must be before it constitutes an increase in punishment.   I believe that the Supreme Court would hold that only very severe qualitative deprivations of the sort at issue in Wilkinson v. Austin, 125 S.Ct. 2384 (2005) (challenge to transfer to supermax prison is cognizable under Due Process Clause), which

are not alleged to be present in the low custody level of a satellite camp, would satisfy the increase in punishment requirement of an Ex Post Facto Clause violation.

A duly sentenced inmate has no constitutional right to be confined in any particular prison or at any particular custody level. See Olim v. Wakinekona, 461 U.S. 238 (1983) (holding that prisoner has no constitutional right to be housed in a particular prison or state); Meachum v. Fano, 427 U.S. 215 (1976) (concluding a prisoner has no liberty interest in which prison he is housed). And see Burke v. Romine, 85 Fed.Appx. 274, 2003 WL 23173709 (3d Cir.2003)("Although we sympathize with Burke's desire to be imprisoned where he can remain in contact with his family, the transfer of a prisoner for reasons related to a legitimate penological interest is a matter within the discretion of the prison authorities.") If a prisoner can be transferred without notice from prison to prison or within the same prison be arbitrarily placed into restrictive confinement, see Sandin v. Conner, 515 U.S. 472, 486 (1995)(inmate did not, by being given 30 days in the R.H.U., suffer any "atypical, significant deprivation" that would implicate the Due Process Clause); compare Shoats v. Horn, 213 F.3d 140 (3d Cir.2000) (eight years in solitary is atypical and implicates Due Process Clause) it would be difficult to maintain that these identical actions are constitutionally problematic under the Ex Post Facto Clause because, being

necessarily applied to an inmate who had previously been sentenced, they "increase" the punishment for a crime.   Looked at from the opposite end, if any change in fact in the qualitative severity of a sentence constitutes a legal increase in punishment, and therefore violates the Ex Post Facto Clause, the Bureau of Prisons would be prohibited from housing inmates in or transferring inmates to new prisons unless they were at least as comfortable as ones existing at the time of an inmate's offence, prohibited from making meals and recreational facilities for inmates more spartan, and so on ad absurdum.   Clearly, there is some line between changes in conditions of confinement (such as mandatory solitary confinement) which violate the Clause and those (such as confiscating weight room equipment) which do not.   In the absence of better guideposts from the Supreme Court, I believe the difference in conditions between low minimum prison camps and community corrections centers does not constitute increased punishment.

But if the increase in punishment element of an Ex Post Facto Clause claim were met, petitioner still could not prevail. The Ex Post Facto Clause does not confer immunity on a sentenced defendant from any adverse consequences which result from the correction of a court's legally incorrect sentence.   See United States v. Pennavaria, 445 F.3d 720 (3d Cir.2006)(vacating sentence on government's appeal and remanding).   Similarly, the Clause does not bar the correction by the legislature or an executive agency

8

of the erroneous interpretation by another executive agency of a clear pre-existing statute.   See Metheny v. Hammonds, 216 F.3d 1307, 1310-11 (11th Cir.2000), cert. denied, 531 U.S. 1196 (2001). In Metheny, it is true, the Eleventh Circuit drew a distinction between corrections of clear statutes (no Ex Post Facto Clause violation) and corrections of ambiguous statutes (possible violation).   That does not help petitioner, because the law had been settled for some time that community confinement and imprisonment are two different concepts.   See Serafini, supra, 233 F.3d at 777.   When an executive agency corrects another agency's (or its own) former erroneous interpretation of a statute, no Ex Post Facto Clause violation arises.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.


DATE: ___0/20/06_____          _____

Keith A. Pesto,
United States Magistrate Judge

Notice to:

Leonard Sweeney, Esquire
156 Perry Highway
Pittsburgh, PA 15229

Christy C. Wiegand, Esquire
United States Attorney's Office
United States Post Office and Courthouse
Pittsburgh, PA 15219

9